FILED
CLERK
7/15/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

NOTICE OF MOTION TO
SUPPRESS

        - v -

25-CR-174

ANIBAL EDGARDO MEJIA GUZMAN

                      Defendant
--------------------------------------------------------X

PLEASE TAKE NOTICE, that the defendant **Anibal Edgardo Mejia Guzman**, by his attorney **Felipe Garcia**, of the Federal Defenders of New York, and upon accompanying memorandum of law, will move the Court, before Honorable Joanna Seybert, United States District Judge for the Eastern District of New York, for an order:

1. Suppressing all physical evidence recovered from Mr. Mejia Guzman on or about April 11, 2025, including but not limited to a knife, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution, and

2. Suppressing all statements made by Mr. Mejia Guzman to law enforcement officers, including immigration and custom enforcement officers, on April 11, 2025, pursuant to Fed. R. Crim. P. 12 (b)(3)(C) and the Fourth Amendment of the United States Constitution, and

3. In the alternative, directing that a hearing be held outside the presence of the jury before trial as to the admissibility of this evidence, and

4. Granting such other and further relief as the Court may deem just and proper.

DATED:      CENTRAL ISLIP, N.Y.
             July 11, 2025

_____
Felipe Garcia
Attorney for Mr. Mejia Guzman
Federal Defenders of New York, Inc.
770 Federal Plaza, Central Islip, NY, 11722
(631) 712-6513

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

      - v -

                                     25-CR-174

ANIBAL EDGARDO MEJIA GUZMAN

               Defendant
-------------------------------------------------------------X


# Memorandum of Law in Support of
# Anibal Edgardo Mejia Guzman Motion to Suppress

Felipe Garcia
Attorney for Mr. Mejia Guzman
Federal Defenders of New York, Inc.
770 Federal Plaza, Central Islip, NY, 11722
(631) 712-6513

## INTRODUCTION

On April 11, 2025, law enforcement officers, including Immigration and Customs Enforcement ("ICE") officers, unlawfully seized and arrested Mr. Mejia Guzman. They could not reasonably believe that a 46-year-old, Mr. Mejia Guzman, was the person they were looking for, a 26-year-old man who looked nothing like him. In addition, the officers had no independent probable cause to arrest Mr. Mejia Guzman on that date.

The officers were surveilling the area near 285 Belmont Avenue in West Hempstead to effectuate the arrest of someone else, a prior resident at the location. That man, who is not Mr. Mejia Guzman, was the subject of an administrative warrant of removal, issued by ICE, not a judge. Shortly after 7:20am, Mr. Mejia Guzman, a construction worker, left his residence at 285 Belmont Avenue in West Hempstead. He got into his truck and started driving to work.

Mr. Mejia Guzman drove for two and a half blocks when he was pulled over by two unmarked cars. At the time he was stopped, Mr. Mejia Guzman had a utility knife clipped in his right pants pocket. He uses the knife for his work with concrete and drywall.

Mr. Mejia Guzman politely asked why they had pulled him over and the officers stated that they had an arrest warrant. They did not ask who he was, and did not say whom their warrant was for. The officers had a photograph of their suspect, who looked nothing like Mr. Mejia Guzman. They did not give him any other reason for the stop. Mr. Mejia Guzman asked the officers to show him the warrant. Instead, one of the officers

opened the driver's side door and grabbed Mr. Mejia Guzman's arm. A second officer in the passenger side of the vehicle also grabbed him. The officers pulled Mr. Mejia Guzman out of the vehicle through the passenger side door, tased him, threw him on the ground and handcuffed him. Mr. Mejia Guzman never pulled out the knife on the officers. The government alleges that after the officers grabbed Mr. Mejia Guzman and while pulling him out of the car, one officer sustained a swollen lip, and another suffered two small abrasions on his fingers.

Mr. Mejia Guzman was arrested, processed for removal, and held in immigration custody. Weeks later, on May 1, 2025, he was transported to federal court and charged with Assaulting Federal Officers, under 18 U.S.C. §§ 111(a)(1), 111(b).

Mr. Mejia Guzman now moves to suppress all physical evidence recovered from his person and his vehicle, including a utility knife, as well as all statements he made to law enforcement officers, including Immigration and Customs Enforcement Officers, because all this evidence was the fruit of an illegal seizure and search. In the alternative, Mr. Mejia Guzman respectfully requests that the Court hold a suppression hearing.

**FACTS**

At around 7:15am on April 11, 2025, 46-year-old Anibal Edgardo Mejia Guzman left his house to go to work. He lived at 285 Belmont Avenue in West Hempstead and worked as a concrete worker, building and repairing homes and other structures. *See* Exhibit A, U.S. Department of Homeland Security Report. Nine other people resided at the location, one of them being the subject of the ICE administrative warrant. Two of the other occupants in the home had their cars parked in the driveway. Mr. Mejia Guzman's

pickup truck was parked on the street, across from the house. Law enforcement officers with the Long Island Fugitive Operations Unit, which included Immigration and Customs Enforcement Deportation Officers and Special Agents with the U.S. Department of Homeland Security, were parked outside of Mr. Mejia Guzman's home looking for the suspect of an administrative warrant of removal or deportation. *See* Exhibit B, U.S. Department of Homeland Security Warrant of Removal/Deportation. The warrant of removal or deportation had not been issued by a neutral magistrate. It was not based on probable cause. Instead, it was issued by an ICE agent and was based on a reinstated order of removal under INA § 241(a)(5). *See* 8 CFR § 241.2(a) (listing the federal immigration officials who can issue removal warrants).

The officers were in unmarked vehicles and plain clothes, wearing only khaki law enforcement vests that said "Police" and "Police: Homeland Security Investigations." *See* Exhibit C, Pictures of the vests. The suspect they were looking for, a 26-year-old male, had been arrested in January 2025, on domestic violence charges and had given 285 Belmont Avenue, West Hempstead, as his residential arrest when he was booked. *See* Exhibit D, Suspect's RAP sheet. The suspect was Hispanic with black hair, brown eyes, 5'10" tall, and weighed 160 pounds, *See Id.; see also* Exhibit E, Picture of Suspect.[1]

The officers saw Mr. Mejia Guzman leaving the house and walking across the street toward his pickup truck, a Toyota Tacoma with a Maryland license plate. *See* Exhibit A. The officers did not approach Mr. Mejia Guzman or attempt to ascertain his

---

[1] The suspect's picture was taken on the date he was arrested, January 8, 2025.

identity at that time. Mr. Mejia Guzman entered his pickup truck and began to drive to work. The officers then started driving behind him. *Id.*

Mr. Mejia Guzman is a 46-year-old Hispanic male, two decades older than the subject of the warrant. *Id.; see also* Exhibit F, Picture of Anibal Mejia Guzman.[2] He looks nothing like the suspect:

 

*Compare* Exhibit E, Picture of the Suspect *with* Exhibit F, Picture Anibal Mejia Guzman. Nonetheless, the ICE agents stopped Mr. Mejia Guzman's vehicle minutes later, just two and a half blocks away from his residence. *Id.* Mr. Mejia Guzman had not violated any traffic laws when he was stopped by the officers.

Mr. Mejia Guzman pulled his truck over in front of 162 Broadway, West Hempstead. One of the unmarked vehicles parked in front of the pickup truck, the other pulled over behind it. Two officers approached Mr. Mejia Guzman's pickup, one on each side. The officers told Mr. Mejia Guzman that they had a warrant and opened the driver and passenger doors. The officers did not ask Mr. Mejia Guzman his name or to see his

---

[2] This picture of Anibal Mejia Guzman was taken in February 2025.

identification and immediately began to effectuate an arrest. Mr. Mejia Guzman asked the officers to show him the warrant, but they refused. The officer on the driver's side of the vehicle grabbed Mr. Mejia Guzman's arm and observed a utility knife in his right pants pocket. *See* Exhibit A. Mr. Mejia Guzman was then grabbed by the officer in the passenger's side. As the officers forcibly removed Mr. Mejia Guzman from the pickup, one of them was allegedly hit in the mouth sustaining a swollen lip. *Id.*

A third officer arrived at the scene and approached the passenger side of the vehicle. *Id.* The two officers on the passenger side then pulled Mr. Mejia Guzman out of the car, threw him on the ground, and tased him. *Id*. He was then placed in cuffs. While handcuffing Mr. Mejia Guzman, one of the officers sustained two small cuts to his fingers. *Id*.  The officers took the utility knife from Mr. Mejia Guzman and proceeded to search him. *Id.* They found his identification card listing his true name and age, reflecting he was not the subject of the administrative warrant for removal and deportation, a man decades younger than him. *Id*. Mr. Mejia Guzman was not the person they were looking for and they didn't have a warrant for his arrest.

Mr. Mejia Guzman was then transported to 535 Federal Plaza, Central Islip, and processed for immigration detention. While there Mr. Mejia Guzman was questioned by an Officer from Immigration and Customs Enforcement. He was advised of his rights and subsequently provided a statement to the officer. *See* Exhibit G, Record of Sworn Statement.

**ARGUMENT**

I.    **The Seizure and Search of Mr. Mejia Guzman violated the Fourth Amendment, therefore all Tangible Evidence Derived from the Seizure and Search must be Suppressed**

The Fourth Amendment "stands as an essential bulwark against arbitrary and unreasonable governmental intrusion—whatever its form, whatever its purpose—upon the privacy and liberty of the individual." *United States v. Dionisio*, 410 U.S. 19, 42 (1973) (Marshall, J., dissenting). Accordingly, warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to limited exceptions. *Katz v. United States*, 389 U.S. 347 (1967).

A.   <u>The Officers Didn't Have Probable Cause to Arrest Mr. Mejia Guzman</u>

The Fourth Amendment requires that "no warrants shall issue, but upon probable cause …" U.S. Const. amend. IV. Probable cause is the quantum of proof required to render most searches and seizures reasonable, whether undertaken with or without a warrant. *See Carroll v. United States*, 267 U.S. 132, 155-56 (1925). Requiring a threshold showing of probable cause to search or seize represents a compromise between the competing interests of law and order and individual liberty. *See Brinegar v. United States*, 338 U.S. 160, 176 (1949). It is the government who must shoulder the burden of proof in establishing probable cause. *See United States v. Elgisser*, 334 F.2d 103, 110 (2d. Cir. 1964).

Articulating the precise meaning of probable cause is not possible. *See Ornelas v. United States*, 517 U.S. 690, 695 (1996). Probable cause is an objective test, but is also a flexible one, based on the "totality of the circumstances." *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *see also Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). When police arrest the

wrong person, they violate the Fourth Amendment unless "the arresting officer had a reasonable, good faith belief that he was arresting the correct person. *Anderson v. United States*, 107 F. Supp. 2d 191, 197 (E.D.N.Y. 2000); *see also United States v. Rosario*, 543 F.2d 6, 8 (2d Cir. 1976) (excusing the arrest of the wrong suspect only if misidentification is an "understandable mistake"); *Martinez v. City of New York*, 340 Fed. Appx. 700, 701 (2d Cir. 2009) (unpublished) (arresting officer must "reasonably believe" arrestee was the right person). Whether the officers' mistake was reasonable is a question of fact requiring an evidentiary hearing. *See Heien v. North Carolina*, 574 U.S. 54 (2014).

In cases where law enforcement has an arrest warrant the analysis is similar. *See Simon v. City of New York*, 893 F.3d 83, 94 (2d Cir. 2018) ("because a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to acting without a warrant at all."). However, administrative warrants, like the ones issued by ICE, differ significantly from warrants in criminal cases, in that they do not require a detached and neutral magistrate. *Lopez-Lopez v. Cnty. Of Allegan*, 321 F. Supp. 3d 794, 799 (W.D. Mich. 2018).

When it comes to immigration arrests, the lawfulness of a seizure of a non-citizen turns on the familiar principles of reasonable suspicion and probable cause. *United States v. Murillo-Gonzalez*, 524 F. Supp. 3d 1139, 1147 (D.N.M. 2021), *aff'd*, No. 22-2123, 2024 WL 3812480 (10th Cir. Aug. 14, 2024) (internal citations omitted). If an officer detains a person for a brief, investigatory stop, the stop must be supported by reasonable suspicion that the person is an alien illegally in the United States … and if an officer arrests a person,

the arrest must be supported by probable cause that the person is an alien illegally in the United States. *Id.*

In Mr. Mejia Guzman's case, there was no probable cause to seize and arrest him on April 11, 2025. The officers saw him walk out of the house, across the street, and into his pickup truck. They did not see Mr. Mejia Guzman break any law or engage in unlawful activity of any kind. Nor did he commit a traffic violation when he drove for two and a half blocks. In addition, the warrant for removal or deportation in this case was not a judicially authorized arrest warrant. This type of removal warrant is based on a reinstated order of removal under INA § 241(a)(5)[3] and is issued ministerially by an authorized ICE supervisor, not by a neutral magistrate on a finding of probable cause. *See* 8 C.F.R § 241.2(a) (1997) (listing all immigration officials that can issue a warrant of removal which include special agents in charge, group supervisors, port directors, and chief field operators). The warrant is simply part of ICE's enforcement once it has itself determined, with no neutral arbiter of facts, that it wishes to deport someone who was previously removed. *See e.g.* 8 C.F.R. § 241.8 (1997).

Nor can it be said that it was reasonable for officers to believe Mr. Mejia Guzman was the subject of the ICE administrative warrant of removal or deportation. The officers had seen the suspect's pictures prior to seizing and arresting Mr. Mejia Guzman that day. They were also able to observe Mr. Mejia Guzman before he started driving from his house, and they did not approach him to ascertain his identity. Finally, both officers were

---

[3] INA § 241(a)(5) is codified in 8 U.S.C. § 1231.

within feet of Mr. Mejia Guzman when they approached his pickup truck after pulling him over. Standing right in front of him, at the driver's side window, it was objectively clear to any reasonable officer that they had made a mistake. The subject of the warrant for removal or deportation was 20 years younger than Mr. Mejia Guzman and the men did not look alike. It simply was not reasonable for the officers to believe that Mr. Mejia Guzman was the person they were looking for.

Mr. Mejia Guzman's seizure and subsequent arrest violated his Constitutional rights under the Fourth amendment of the U.S. Constitution. Officers did not have probable cause to seize and arrest him on April 11, 2025, and it was not reasonable for officers to believe Mr. Mejia Guzman was the subject of the warrant of removal. Thus, all evidence obtained as a result of the unlawful seizure and arrest should be suppressed as fruit of the poisonous tree.

## B. Law Enforcement lacked reasonable suspicion for the stop.

A traffic stop is a seizure under the Fourth Amendment. *Whren v. United States*, 516 U.S. 806, 809-10 (1996) ("[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure"). Accordingly, traffic stops are "subject to the constitutional imperative that [they] not be unreasonable under the circumstances." *Id*. at 810.

A traffic stop is reasonable under the Fourth Amendment under one of two conditions. First, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Alternatively, a vehicle may be stopped "when

a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014). In other words, "[t]he Fourth Amendment requires that an officer making such a stop have . . . reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005). "A traffic stop based on reasonable suspicion, like all *Terry* stops, must be 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Rodriguez v. United States*, 575 U.S. 348, 365, (2015) (Thomas, J., dissenting) (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 178 (2004)).

Reasonable suspicion is judged under the "totality of the circumstances." *United States v. Sokolow,* 490 U.S. 1, 7 (1989). It is essential for the District Court to make clear findings as to the relevant "circumstances." *See United States v. Castrillon*, 716 F.2d 1279, 1282 (9th Cir. 1983) (the need for a sufficient record of factual findings is "particularly important" when it is necessary to look to "all the surrounding circumstances" to decide whether suppression is warranted). A seizure "is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, (2000). Reasonable suspicion requires more than a "mere hunch." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016).

The defense must "make a preliminary showing as to the circumstances of the arrest sufficient to raise a question as to its legality." *United States v. Pena*, 961 F.2d 333, 338-39 (2d Cir. 1992) (citing *United States v. Rivera*, 321 F.2d 704, 706 n. 1. (2d Cir. 1963)).

Once the defense has shown a basis for the motion, the "burden shifts to the government to demonstrate that the search or seizure did not violate the Fourth Amendment." *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980) ("if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search"). "The Government bears the burden of proving, by a preponderance of the evidence, that reasonable suspicion existed for a [traffic] stop." *United States v. Medina*, 301 F. Supp. 2d 322, 328 (S.D.N.Y. 2004) (citing *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993)).

Here, law enforcement lacked the requisite reasonable suspicion to conduct a warrantless traffic stop of Mr. Mejia Guzman's pickup truck on April 11, 2015. Officers observed Mr. Mejia Guzman leave his home and walk across the street toward his pickup truck, but they chose not to approach him at this time and verify his identity. They followed Mr. Mejia Guzman at close range and never saw him commit any traffic violations prior to stopping him. In addition, the officers did not observe Mr. Mejia Guzman engage in any criminal behavior that morning and law enforcement had no evidence that he was actively engaged in or about to engage in any criminal activity. The officers had an administrative warrant for removal or deportation for a suspect that was 20 years younger than Mr. Mejia Guzman.

In addition to the description, the officers also had pictures of the subject of the warrant for removal. The pictures did not look anything like Mr. Mejia Guzman. They had watched Mr. Mejia Guzman walking from his front door, across the street, into his vehicle, providing ample opportunity to observe that he was not the person they were

looking for. Thus, the officers violated Mr. Mejia Guzman's Constitutional rights under the Fourth Amendment. Any evidence seized after the unlawful stop of his vehicle is fruit of the poisonous tree and must be suppressed.

C.  Mr. Mejia Guzman's statements should be suppressed as "fruit of the poisonous tree."

The Court should suppress not only the physical evidence but also the statements as inadmissible "fruit" of the illegal seizure. *See Dunaway v. New York*, 442 U.S. 200 (1979); *Wong Sun,* 371 U.S. at 484-88; *U.S. v. Morales*, 788 F.2d 883, 885 (2d Cir. 1986) ("Evidence obtained by exploitation of a primary illegality is regularly excluded under traditional taint analysis as the 'fruit of the poisonous tree.' The *Wong Sun* doctrine is applied whether the fruit of the Fourth Amendment violation is physical evidence or a confession.") (internal citations omitted). Because law enforcement illegally seized and searched Mr. Mejia Guzman, his statements should be suppressed as 'fruit of the poisonous tree."

**CONCLUSION**

For the reasons stated above, Mr. Mejia Guzman respectfully requests that this Court suppress the physical evidence and statements obtained after the unlawful seizure and search, or in the alternative, conduct and evidentiary hearing to determine whether the officer's mistake in Mr. Mejia Guzman's case was reasonable.

DATED:    CENTRAL ISLIP, N.Y.
          July 11, 2025

_____
Felipe Garcia
**Attorney for Mr. Mejia Guzman**
Federal Defenders of New York, Inc.
770 Federal Plaza, Central Islip, NY, 11722
(631) 712-6513

cc:    Sarah Elardo, AUSA (by ECF and email)