AXB/PP:SAE
F. #2025R00257

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                Docket No.  25-CR-174 (JS)

ANIBAL EDGARDO MEJIA GUZMAN,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

                      JOSEPH NOCELLA, JR.
                      UNITED STATES ATTORNEY
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York 11722

Sarah A. Elardo
Special Assistant U.S. Attorney
    (Of Counsel)

## Table of Contents

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................... 1

DISCUSSION ............................................................................................................ 3

    A.      Applicable Law ............................................................................ 4

    B.      The Investigatory Stop of the Defendant was Supported by Reasonable Suspicion ............................................................................................ 5

    C.      The Fruit of the Poisonous Tree Doctrine is Inapposite Here. ....................... 6

  II.     The Defendant's Post-Arrest Statements Are Admissible ................................ 7

  III.    The Defendant's Motions Should be Denied Without a Hearing ..................... 9

CONCLUSION ......................................................................................................... 10

Table of Authorities

CASES

Colorado v. Connelly, 479 U.S. 157, 167-69 (1986) ....................................................... 7

Fare v. Michael C., 442 U.S.707, 726 (1979). ............................................................... 8

Kentucky v. King, 563 U.S. 452, 459 (2011) ................................................................. 4

Morales v. Chadbourne, 793 F.3d 208, 215 (1st Cir. 2015) ............................................. 5

Moran v. Burbine, 475 U.S. 412, 421 (1986) ................................................................ 8

United States v. Pena, 961 F.2d at 338-39 (2d Cir. 1992) ...................................... 4, 7, 9

Richards v. Wisconsin, 520 U.S. 385, 394 (1997) .......................................................... 5

Soukaneh v. Andrzeiewski, 112 F.4th 107, 117 (2d Cir. 2024) ....................................... 4

Terry v. Ohio, 392 U.S. 1, 16 (1968) ........................................................................... 4

United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990) ........................................ 4

United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) ............................................. 5

United States v. Cruz, No. 20-CR-321, 2021 WL 4482658 ............................................. 3

United States v. Elstad, 470 U.S. 298, 309 (1984) ........................................................ 8

United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) ............................................ 9

United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) .............................................. 7

United States v. Manson, No. 22-CR-211, 2023 WL 5096021 ......................................... 7

United States v. Moore, 21-CR-270, 2022 WL 17250548 ............................................... 4

United States v. Olivares-Rangel, 458 F.3d 1104, 1117 (10th Cir. 2006) .......................... 7

United States v. Rivera, 321 F.2d 704, 706 n. 1. (2d Cir. 1963) ..................................... 4

United States v. Sanders, 208 F.3d 204 (2d Cir. 2000) .................................................. 4

United States v. Santana, 485 F.2d 365, 368 (2d Cir. 1973) .......................................... 4

United States v. Shtevman, No. 10-CR-347 (SJ), 2011 WL 2006291 ................................ 7

United States v. Sokolow, 490 U.S. 1, 7 (1989) ................................................................ 5

United States v. Torres, No. 22-1143-CR, 2024 WL 4586611................................................ 8

United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005) .................................................. 9

United States v. Weaver, 9 F.4th 129, 140 (2d. Cir. 2021).................................................... 4

Utah v. Strieff, 579 U.S. 232, 237 (2016)...................................................................... 6

## STATUTES

8 U.S.C. §1357(a)(1)........................................................................................ 5

## REGULATIONS

8 C.F.R. § 287.8(b)(2)...................................................................................... 5

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to defendant Anibal Edgardo Mejia Guzman's July 11, 2025 pretrial motions to: (1) suppress physical evidence recovered from his person at the time of his arrest on April 11, 2025, including but not limited to a knife; (2) suppress all statements made by the defendant to law enforcement officers, including Immigration and Customs Enforcement ("ICE") officers, on April 11, 2025; and (3) conduct a hearing on these issues. For the reasons set forth below, each of his motions should be denied.

RELEVANT FACTUAL BACKGROUND

On April 11, 2025, Deportation Officer John Dickerson and Special Agent Joshua Abbensetts were present outside of an address on Belmont Avenue in West Hempstead, New York, conducting physical surveillance. The officers were there to execute an administrative warrant of removal for another individual (not the defendant), which had been issued following a lawful Immigration Court final removal order.[1] At that time, they had the known address, height, weight, age, race, gender, the target's prior criminal Immigration and criminal history, and a photograph of the target. Dickerson observed the defendant, who matched the physical description of their target, exit the premises on Belmont Avenue. The defendant entered a Toyota Tacoma with a Maryland license plate number and drove away. Dickerson and Abbensetts followed behind and eventually conducted a traffic stop of the defendant's vehicle.

---

[1] The defendant argues the administrative warrant of removal is issued by ICE, not an Immigration Judge; however, that is misleading to the Court. Though the ICE issued warrant of removal is not issued by a Judge, the prior removal order, which is the underlying basis for said administrative warrant of removal, is. The intended target was ordered removed by an Immigration Judge on December 30, 2018. As the intended target failed to depart the United States, ICE, pursuant to the final order of removal, has the authority to issues an administrative warrant of removal. 18 U.S.C. §§ 1226 and 1357. In any event, resolution of this issue is irrelevant to the defendant's motion and whether he unlawfully assaulted federal officers.

Dickerson and Abbensetts approached the vehicle to confirm the identity of the target and conduct the lawful administrative arrest. They were wearing clearly identifiable police placards on their service issued bullet proof vests. See Exhibit 1 (Photographs of Vest). Dickerson and Abbensetts requested the defendant roll his window down and identify himself. The defendant refused to comply with these repeated, lawful requests.

Upon the defendant's failure to comply with his lawful commands, Dickerson opened the driver's side door of the vehicle. The defendant grabbed the vehicle door and pulled it shut. Simultaneously, Abbensetts observed the defendant put his foot on the break, grab the gear of his vehicle, and attempt to put the vehicle in reverse. Abbensetts turned off the ignition to the defendant's vehicle. As the officers attempted to remove the defendant from the vehicle, he resisted. The defendant struck Dickerson in the mouth with his elbow, causing Dickerson to sustain a swollen and bloody lip. See Exhibit 2 (Photograph of Officer Dickerson's Injury).

After moving to the passenger side of the vehicle, Abbensetts observed a utility knife clipped to the defendant's front right-side pants pocket. Abbensetts attempted to remove and secure the knife, but the defendant fought with him to maintain control over possession of the knife. While the defendant tried to pull the utility knife from Abbensetts, Dickerson used his service-issued taser to attempt to incapacitate the defendant, but failed to make contact with the defendant's skin and was unsuccessful in restraining the defendant. Ultimately, Abbensetts retrieved the utility knife from the defendant. See Exhibit 3 (Photograph of Recovered Utility Knife). After several minutes, the defendant was removed from the vehicle, handcuffed, and placed under arrest.

While searching the defendant incident to his arrest, officers recovered a Honduran identification card bearing the defendants name, date of birth, and other identifiers. According to

law enforcement databases, at the time of the defendant's arrest, he was illegally present in the United States. The defendant had been previously required to leave the United States for his home country of Honduras, following his immigration proceedings in 2010.

Following his arrest, the defendant was transported back to ICE offices in Central Islip for processing. Deputation Officer Efren Olivencia read the defendant his <u>Miranda</u> rights in Spanish, which is a language the defendant speaks and understands. Thereafter, the defendant knowingly and voluntarily waived his <u>Miranda</u> rights and answered questions. The defendant's answers were memorialized on a form by Olivencia. The defendant thereafter signed the written statements, attesting to their accuracy. <u>See</u> Exhibit B to Def. Motion, (Defendant's Sworn Statement).

<u>DISCUSSION</u>

I.    <u>Officers Lawfully Stopped and Arrested the Defendant on April 11, 2025.</u>

As the proponent of the motion to suppress, the defendant "bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." <u>See</u> <u>United States v. Cruz</u>, No. 20-CR-321, 2021 WL 4482658, at *7 (E.D.N.Y. Aug. 14, 2021). Under the facts here, he cannot do so. Dickerson and Abbensetts observed the defendant, who they believed to be their intended target, while conducting surveillance to make a lawful administrative arrest, pursuant to a warrant of removal. The officers had reasonable suspicion to believe the defendant was their intended target. Accordingly, they attempted to stop the defendant as part of their investigation. Once the officers stopped the defendant and attempted to speak with him, the defendant resisted their lawful commands, which led to the defendant physically resisting officers in the course of their official duties, causing injury to Dickerson in the process. Under these circumstances, suppression should be denied.

3

A.   Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures.  See U.S. Const. amend. IV.  In general, law enforcement officers must obtain a warrant supported by probable cause before conducting a search or seizure.  Kentucky v. King, 563 U.S. 452, 459 (2011).  The defendant must "make a preliminary showing as to the circumstances of the arrest sufficient to raise a question as to its legality."  United States v. Pena, 961 F.2d at 338-39 (2d Cir. 1992) (citing United States v. Rivera, 321 F.2d 704, 706 n. 1. (2d Cir. 1963)).

"Officers may, of course, perform a brief investigatory stop without probable cause or a warrant."  United States v. Moore, 21-CR-270, 2022 WL 17250548, at *2 (E.D.N.Y. Nov. 28, 2022).  Such stops, named after the Supreme Court's decision in Terry v. Ohio, 392 U.S. 1, 16 (1968), "are lawful custodial interrogations that do not rise to the level of an arrest and are justified when an officer has reasonable suspicion to believe that criminal activity has occurred or is about to occur."  Soukaneh v. Andrzeiewski, 112 F.4th 107, 117 (2d Cir. 2024) (citation omitted).  As the Second Circuit has explained, "[t]here are no hard and fast rules for evaluating the conduct of law enforcement agents conducting investigative stops."  United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990).

Reasonable suspicion "is 'a rather lenient' test that is measured using the perspective of a trained and experienced law enforcement officer."  United States v. Sanders, 208 F.3d 204 (2d Cir. 2000) (quoting United States v. Santana, 485 F.2d 365, 368 (2d Cir. 1973)).  Reasonable suspicion "merely requires that a police officer be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion on the citizen's liberty interest."  United States v. Weaver, 9 F.4th 129, 140 (2d. Cir. 2021) (internal quotation marks and alterations omitted). "The standard is 'not high.'"

United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) (quoting Richards v. Wisconsin, 520 U.S. 385, 394 (1997)).

In the immigration context, immigration officers are authorized by statute to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. §1357(a)(1). Accompanying regulations authorize an immigration officer to "briefly detain [a] person for questioning" if the "immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned … is an alien illegally in the United States." 8 C.F.R. § 287.8(b)(2). Simply stated, "immigration officers [must] have reasonable suspicion to briefly stop individuals to question them regarding their immigration status and probable cause for any further arrest and detention. Morales v. Chadbourne, 793 F.3d 208, 215 (1st Cir. 2015). Reasonable suspicion is judged under the "totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 7 (1989).

   B.    The Investigatory Stop of the Defendant was Supported by Reasonable Suspicion

The defendant argues that the law enforcement officers lacked reasonable suspicion for the vehicle stop. However, that argument is meritless. Dickerson and Abbensetts were lawfully present and made a brief, investigatory stop based on specific and articulable facts justifying their intended limited intrusion onto the defendant's liberty interest.

As an initial matter, Dickerson and Abbensetts were lawfully present from the outset. They were lawfully surveilling the residence in question in furtherance of executing a valid administrative warrant. They had specific background information and a lawful basis to investigate, approach, and ultimately arrest the individual they believed was the subject of the warrant. The officers reasonably believed—albeit mistakenly—that the defendant was the subject of the warrant based on the information available to them, namely, an apparent match in physical

5

description and access to the last known address of the target.  Upon observing the defendant, officers approached his vehicle to determine his identity and effectuate the administrative arrest, if appropriate to do so. These facts—which are not materially disputed—establish reasonable suspicion for the traffic stop.

Nonetheless, Dickerson and Abbensetts approached the vehicle, identified themselves as law enforcement, and requested that the defendant roll down his window to identify himself.  They were well within the scope of their mission to request the defendant's biographical information. The defendant's reaction was legal throughout.  He refused to comply with the officers' lawful commands, leading Dickerson to open the driver-side door, whereupon he physically resisted the officers and struck Dickerson in the mouth with his elbow.  Under these circumstances, his arrest for assaulting federal officers was plainly lawful.

C.    The Fruit of the Poisonous Tree Doctrine is Inapposite Here.

The defendant argues that any evidence seized after the unlawful stop of the defendant's vehicle—i.e., the knife—must be suppressed as fruit of the poisonous tree. However, the fruit of the poisonous tree doctrine is inapposite, and suppression is unwarranted.

By applying the fruit of the poisonous tree doctrine, courts may exclude evidence recovered in a search linked to a previously conducted illegal search.  As the Supreme Court has explained, "the exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure," as well as "evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." Utah v. Strieff, 579 U.S. 232, 237 (2016).  Here, however, for the reasons set forth above, the defendant's stop and arrest were lawful and comported with the Fourth Amendment—any "fruits" of that lawful arrest are, of course, not "derivative of an illegality." Id.  Suppression, therefore, is not appropriate.  See United

States v. Manson, No. 22-CR-211, 2023 WL 5096021, at *6 (D. Conn. Aug. 9, 2023) ("The fruit-of-the-poisonous-tree doctrine does not apply if the proverbial tree was not poisonous to the defendant in the first place; 'the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree.'") (quoting United States v. Olivares-Rangel, 458 F.3d 1104, 1117 (10th Cir. 2006)).

II.    The Defendant's Post-Arrest Statements Are Admissible

The defendant argues that his post-arrest statements should also be suppressed as "fruit of the poisonous tree." For the reasons stated above, that argument lacks merit because the arrest that led to those statements was lawful. The defendant was thereafter adequately read his Miranda rights, expressed his understanding of those rights and validly waived them. There is no evidence of coercion.    Accordingly, for all these reasons, the Court should deny suppression of the defendant's statements.

When a statement or confession is obtained through interrogation of a defendant who is in custody, the government must demonstrate that the defendant was informed of, and validly waived, his Fifth Amendment rights under Miranda. To prove a valid waiver of Miranda rights, the government must show, by a preponderance of the evidence, that the defendant relinquished his rights voluntarily and that the defendant had a full awareness of the rights being waived and the consequences of waiving that right.  See Colorado v. Connelly, 479 U.S. 157, 167-69 (1986); United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995).  "[O]n a motion to suppress statements, it is the defendant who bears the burden of demonstrating that he was subject to custodial interrogation.  United States v. Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *14 (E.D.N.Y. May 23, 2011) (citing United States v. Pena, 961 F.2d at 338).  The defendant must

also identify any particular statements he seeks to suppress.  See United States v. Torres, No. 22-1143-CR, 2024 WL 4586611, at *3 (2d Cir. Oct. 28, 2024).  Where the totality of the circumstances reveals an uncoerced choice and the requisite level of comprehension, a court can conclude that Miranda rights have been waived.  See Moran v. Burbine, 475 U.S. 412, 421 (1986).  In the absence of actual coercion or its equivalent, the admissibility of a subsequent, post-Miranda statement should turn "solely on whether it is knowingly and voluntarily made."  United States v. Elstad, 470 U.S. 298, 309 (1984).

Here, the defendant was arrested for assault on a federal officer.  Thereafter, the defendant was transported to ICE offices, where Olivencia read the defendant his Miranda rights in Spanish—a language he speaks fluently. Deportation Officer Jerva John was a witness to the events. John stood in the doorway and had no additional involvement other than being witness to Olivencia speaking to the defendant.  Olivencia thereafter explained the defendant's rights further. There is no evidence of any suggestion that police resorted to physical or psychological pressure to elicit statements. Moran v. Burbine, 475 U.S. 412, 421 (1986). The defendant was not worn down by any improper interrogation tactics or lengthy questioning or by trickery or deceit. Fare v. Michael C., 442 U.S.707, 726 (1979).  The officers did not intimidate or threaten the [defendant] in any way. Id.  The defendant verbally indicated he understood, waived his Miranda rights, and answered questions. The defendant made statements after knowingly and voluntarily waiving his Miranda rights.  Thereafter, his answers were memorialized on a form by Olivencia. The defendant signed the written statement, attesting to their accuracy.   The defendant, at no point in time, indicated he did not understand, misunderstood, or needed clarification.  Nor did he ever invoke his rights to counsel or to remain silent.  The defendant was adequately Mirandized, expressed his

understanding, and engaged in a course of conduct indicating a waiver. There is no evidence of actual coercion.

Accordingly, the motion to suppress the statements should be denied as all the defendant's statements are admissible.

### III.     The Defendant's Motions Should be Denied Without a Hearing

A hearing is unnecessary to decide the defendant's motions because he has not raised a material issue of fact that would necessitate one.

A defendant has no absolute right to an evidentiary hearing on a motion to suppress. See United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005). Rather, a trial court must grant a hearing only if a movant's affidavit contains specific factual allegations which, if proven, would warrant the relief requested.  See id.; United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). There must be a material factual dispute for a hearing to be justified.  See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967).

In this case, no material factual dispute exists as to the circumstances of the defendant's stop, his arrest, or his statements. Notably, the defendant does not contest that he is illegally present in the United States, [if true – that the officers reasonably believed he was the individual they were seeking to arrest because he exited the residence of that individual and they had similar physical descriptions], that he had a physical altercation with the officers at the time of his arrest, that a knife was recovered from his person at that time, and that he made the post-arrest statements attributed to him after being advised of his Miranda rights.  Therefore, the record before the Court is sufficiently developed to dispose of the defendant's motions without a hearing.

9

<u>CONCLUSION</u>

For the reasons set forth above, the defendant's motion should be denied in its entirety.

For the reasons stated above,

Dated:     Central Islip, New York
           July 17, 2025

                                        Respectfully submitted,

                                        JOSEPH NOCELLA, JR.
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                              By:     <u>/s/ Sarah A. Elardo</u>
                                        Sarah A. Elardo
                                        Special Assistant United States Attorney
                                        (718) 254-6263

# EXHIBIT 1





# EXHIBIT 2



# EXHIBIT 3

